

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

May 16, 2018

The Honorable Scott Brumley
Potter County Attorney
500 South Fillmore, Room 301
Amarillo, Texas 79101

Opinion No. KP-0204

Re: Whether an independent school district may contribute funds to a scholarship program for graduates of the district to attend a community college (RQ-0202-KP)

Dear Mr. Brumley:

You ask whether the Amarillo Independent School District ("District") "can lawfully participate in a scholarship program."[1] You describe the proposed scholarship program as a partnership between multiple financial partners: the District, Amarillo College, the Amarillo Economic Development Corporation, and the Amarillo Area Foundation. Brief at 2. You explain that the scholarship program would be offered to all eligible District students and "will cover tuition, fees, and book expenses for up to sixty (60) credit hours at Amarillo College, following graduation from any District high school campus." *Id.* You also tell us that "eligible students must earn a final grade point average of 80 or higher on a 100-point scale, *or* meet Texas Success Initiative . . . college readiness as set by the Texas Higher Education Coordinating Board." *Id.* You state that eligible students must meet compulsory attendance requirements, avoid any major behavior infractions, and "must apply for and complete admission, financial aid, and scholarship assistance at Amarillo College." *Id.* at 3. Lastly, you state that the scholarship program "includes a family income restriction for the student to be eligible." *Id.*

We first consider the authority of the District's board of trustees. The Education Code gives the trustees of an independent school district the "exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.151(b). A district's board of trustees approves the district's budget and can spend the district's funds only in accordance with provisions in the Education Code. *See id.* §§ 44.004(a) (providing that the board must approve the district's budget), 45.105(a) (providing that "public school funds may not be spent except as provided by this section"). Education Code subsection 45.105(c) provides that the expenditure of

> [l]ocal school funds from district taxes, tuition fees of students not
> entitled to free education, other local sources, and state funds not

---

[1]*See* Letter and Brief from Honorable Scott Brumley, Potter Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Dec. 11, 2017), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter" and "Brief," respectively).

> designated for a specific purpose may be used for the purposes listed for state and county available funds and for . . . other purposes necessary in the conduct of the public schools determined by the board of trustees.

*Id.* § 45.105(c). The term "necessary" in this provision means "appropriate or conducive to the conduct of a public school rather than indispensable thereto." Tex. Att'y Gen. Op. No. JM-1265 (1990) at 3 (citing *Moseley v. City of Dallas*, 17 S.W.2d 36, 41 (Tex. Comm'n App. 1929, judgm't adopted) and *Bozeman v. Morrow*, 34 S.W.2d 654, 656–57 (Tex. Civ. App.—El Paso 1931, no writ)). With respect to scholarships, Opinion JM-1265 specifically stated:

> The encouragement and motivation of students in academic achievement would seem to be an appropriate function of the public free schools. Accordingly, it is not possible to say, as a matter of law, that a scholarship could not be structured to further the achievement of a legitimate public purpose of a school district in its conduct of public schools [provided certain constitutional restrictions on public expenditures are met].

Tex. Att'y Gen. Op. No. JM-1265 (1990) at 4. The District's trustees must determine in the first instance whether the proposed scholarship program is appropriate or conducive to the conduct of its public schools. *See id.*; *see also* TEX. EDUC. CODE § 45.105.

We next consider the constitutionality of the expenditure. Texas Constitution article III, section 52(a) prohibits the expenditure of public funds for private purposes. *See* TEX. CONST. art. III, § 52(a); *see also id.* §§ 50, 51; Tex. Att'y Gen. Op. No. H-1010 (1977) at 2 (observing that language applicable to political subdivisions in article III, section 52 is the same as in article III, sections 50 and 51). Its purpose is to prevent the gratuitous grant of public funds for private purposes. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). The Texas Supreme Court recognizes an expenditure of public funds for a public purpose that provides a clear public benefit in return is not an unconstitutional grant of public funds. *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d. 377, 383 (Tex. 2002). Furthermore, an expenditure to directly accomplish a legitimate public purpose is constitutional even though it incidentally benefits a private interest. *See Barrington v. Cokinos*, 338 S.W.2d 133, 140 (Tex. 1960). The Texas Supreme Court provides a three-part test to determine whether an expenditure of public funds accomplishes a public purpose as contemplated by article III, section 52(a). *Tex. Mun. League Intergov'tl Risk Pool*, 74 S.W.3d at 384. A public expenditure satisfies article III, section 52(a) if: (1) the expenditure's predominant purpose is to accomplish a public purpose of the public entity, not to benefit private parties; (2) the public entity retains sufficient control over the expenditure to ensure that the public purpose is accomplished; and (3) the public entity receives a return benefit. *See id.*; *see also* Tex. Att'y Gen. Op. No. GA-0076 (2003) at 6–7.

The District's board of trustees must decide in the first instance, and subject to judicial review for abuse of discretion, whether the expenditure for the scholarship satisfies the three-part *Texas Municipal League* test. Tex. Att'y Gen. Op. Nos. KP-0099 (2016) at 4, GA-0850 (2011) at 3–4, JM-1265 (1990) at 4; *see also Moseley*, 17 S.W.2d at 41 (acknowledging that courts will not

interfere unless there is a clear abuse of discretion). Regarding the first prong concerning a public purpose, we emphasize that the public purpose to be served is not the general good of the public, but a specific purpose of the District. *See* Tex. Att'y Gen. Op. No. GA-0743 (2009) at 2 ("The public purpose served by the expenditure must be an authorized public purpose of the political subdivision."). You tell us the District's participation in the scholarship serves to encourage and motivate its students to attain high academic achievement within the District's schools, as well as improve their college readiness, school attendance, and appropriate student behavior. *See* Brief at 11 (stating that these are appropriate functions of the District); *see also* Tex. Att'y Gen. Op. No. JM-1265 (1990) at 4 (recognizing that the "encouragement and motivation of students in academic achievement would seem to be an appropriate function of the public free schools"), Tex. Att'y Gen. LO-93-093 (1993) at 5 (same). Further, you aver that the scholarship supports the District's mission "to graduate every student prepared for success beyond high school." Brief at 11. Thus, to meet the first prong, the District must reasonably find that the scholarship will indeed incentivize the aims that you claim and that those aims serve the purposes of the District.

Regarding the second and third prongs, you tell us the agreement between the financial partners will include sufficient controls to ensure accomplishment of the public purpose. *See id.* You note that the District will control the scholarship by awarding it to only those students who meet the criteria. And you state that the District will receive a return benefit in the form of students succeeding in, as well as avoiding trouble in, high school. *See id.* at 11–12. You further state that students who live in the District but who do not attend a District school may be induced by the scholarship to return to a District school, enabling the District to "recapture funding and add[] much-needed funds to its budget." *Id.* at 12. To meet the second and third prongs, the District must reasonably find that it will receive a return benefit, and it must exercise control over the funds to ensure the public purpose is accomplished.

## S U M M A R Y

Section 45.105 of the Education Code authorizes an expenditure of an independent school district's funds for "other purposes necessary in the conduct of the public schools determined by the board of trustees." Accordingly, the Amarillo Independent School District's trustees must determine whether the proposed scholarship program is appropriate or conducive to the conduct of its public schools.

Article III, section 52(a) of the Texas Constitution prohibits the expenditure of public funds for private purposes. A school district's expenditure for a scholarship program does not violate article III, section 52(a) provided that the school district: (1) ensures the expenditure is to accomplish a public purpose of the school district, not to benefit private parties; (2) retains sufficient control over the public funds to ensure the public purpose is accomplished; and (3) ensures the school district receives a return benefit. Whether a particular expenditure satisfies this three-part test is a determination for the school district in the first instance, subject to judicial review.

Very truly yours,

KEN PAXTON
Attorney General of Texas


JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee